**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA RICHARD GRIFFIN, | ) | CASE NO.  5:10cv862 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| SUMMIT COUNTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving Doc. Nos. 9, 12] |
| | ) | |
| | ) | |

This matter comes before the Court on Defendants' motions to dismiss the Complaint or for judgment on the pleadings under Fed. R. Civ. P. 12(b)(6) and 12(c).  (Docs. 9, 12.)  Plaintiff has filed briefs in opposition (Docs. 13, 14), and Defendants have replied thereto (Docs. 17, 19.) The matter is ripe for determination. For the reasons set forth below, Defendants' motions are **GRANTED.**

**I. BACKGROUND**

Plaintiff formerly served as a deputy in the Sheriff's Department in Summit County, Ohio. In August 2006, during Plaintiff's employment, an inmate at the Summit County Jail named Mark McCullaugh died while Plaintiff and several other deputies were on duty. Because Plaintiff witnessed some of the events leading up to the death of McCullaugh, he gave a statement to an investigator for the Bureau of Criminal Investigations ("BCI") as well as sworn testimony at several points thereafter. Notably, he gave testimony before the Grand Jury, which ultimately handed down indictments for five of the deputies involved in the altercation that led to McCullaugh's death.

When Plaintiff testified at the criminal trial of Deputy Stephen Krendick, the first of the indicted deputies to stand trial, his testimony allegedly differed from that which he had previously given in his statement to the BCI investigator and from his sworn testimony before the Grand Jury. The judge presiding over Deputy Krendick's trial ultimately dismissed all charges against him. Shortly thereafter, all criminal charges against each of the remaining four deputies were dismissed. In 2009, Plaintiff gave sworn deposition testimony during the course of a civil wrongful death action brought by McCullaugh's estate. That testimony also allegedly differed from previous testimony he had given.

In June 2009, Plaintiff's own statements and testimony were scrutinized when he became the subject of a criminal perjury and falsification investigation. A visiting judge in the Akron Municipal Court held a probable cause hearing on August 26, 2009, at which Detective Larry Brown, a defendant in this action and a Summit County Sheriff's deputy who had conducted the investigation of Plaintiff, offered testimony regarding Plaintiff's statements about the McCullaugh incident. The following transcripts of Plaintiff's statements were offered for the court's review:

1)  Plaintiff's statement to the BCI investigator, dated February 5, 2007 (hereinafter "BCI"). Plaintiff, who had counsel present, provided a recorded proffer to Special Agent Bill O'Connor on the understanding that "no statement [. . .] or other information provided by [Plaintiff] [. . .] [would] be used directly against [him] in any criminal case as long as [he] tells the truth."

2)  Plaintiff's testimony before the Grand Jury, dated August 21, 2007 ("Grand Jury"), in the matter of *State of Ohio v. Krendick, et al.*, Case No. 2007-09-2971.

3)  Plaintiff's testimony at the criminal trial of Deputy Krendick, dated August 1, 2008 ("Criminal Trial"). *State of Ohio v. Krendick*, Case No. 2007-09-2971A.

    4)      Plaintiff's deposition testimony, dated January 12, 2009 ("Deposition"), given during the discovery phase of the civil wrongful death action brought by McCullaugh's estate, *Estate of Mark McCullaugh v. Summit County, Office of County Executive*, 5:07cv2341 (N.D. Ohio).

(Collectively "the McCullaugh transcripts".) Quoting repeatedly from the McCullaugh Transcripts, Detective Brown testified to several instances of Plaintiff's inconsistent testimony. Plaintiff was represented by counsel at the hearing who conducted a cross examination of Detective Brown and offered a closing argument. The court concluded that there was probable cause to charge Plaintiff with "Perjury, a violation of ORC § 2921.11(A), a felony in the 3rd degree, and Falsification, violation of ORC § 2921[.13](A)(1), (2), and (3), misdemeanors of the 1st degree." (Trial Order, *State v. Griffin*, 09-PC-241, Doc. 9-1.) The charges were bound over to the Summit County Grand Jury, which declined to indict Plaintiff.

        Plaintiff now alleges that Defendants subjected him to malicious prosecution and defamation entitling him to damages, including punitive damages. He states a claim for relief against Sheriff Drew Alexander, Chief Investigator Keith Thornton, and Detective Larry Brown (collectively "Individual Defendants") under the Fourth Amendment, and against Summit County under the Fourteenth Amendment. According to Plaintiff, the Individual Defendants retaliated against him for his testimony against the deputies who were ultimately indicted, pursuing him on unfounded charges of perjury and falsification. Plaintiff further claims that Summit County is liable both because the actions of Defendants Alexander and Brown constitute a "persistent custom[,] policy and pattern of unconstitutional conduct aimed at the Plaintiff" and because it permitted this retaliation by exercising "deliberate indifference and/or tacit authorization." (Doc. 1 at ¶ 32, 33.)

Further, Plaintiff claims that Defendant Alexander has defamed him by "mak[ing] defamatory and false statements about the Plaintiff, without privilege, to third parties." (Doc. 1 at ¶ 36.)  Plaintiff does not specify what statements Defendant Alexander made.

Individual Defendants have filed a motion to dismiss or for judgment on the pleadings, attaching Plaintiff's statements and testimony regarding the McCullaugh incident. In their motion, Individual Defendants argue that Plaintiff has failed to make out a claim and that they are entitled to qualified immunity. Summit County has incorporated the facts of and attachments to Individual Defendants' motion in its own motion to dismiss or for judgment on the pleadings.

## II.  DISCUSSION

### A.  Legal Standard on a Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a defendant to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. However, a Rule 12(b) motion must be filed prior to the filing of an answer.  Fed. R. Civ. P. 12(b). Individual Defendants filed an answer in this matter on July 12, 2010 (Doc. 8), the same day on which they filed their motion to dismiss.

This is not fatal to Individual Defendants' motion. The Sixth Circuit has held that, "as a matter of motions practice, such a motion may be properly considered as one for judgment on the pleadings under Fed.R.Civ.P. 12(c), and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6)." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988) (citing *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 182 (7th Cir.1986); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir.1979); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1367 at 688-89 (1969);

Fed.R.Civ.P. 12(h)(2)). As Individual Defendants had styled their motion a 12(b)(6) and/or a 12(c) motion, the Court will analyze it under Rule 12(c).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts.").

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a

matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

**B.  The Court's Review of Matters Outside the Pleadings**

Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)), and a court considering such matters typically will convert a 12(b)(6) motion to a motion for summary judgment. FED. R. CIV. P. 12(d). However, the Sixth Circuit has adopted the Seventh Circuit's view that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner*, 108 F.3d at 88 (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Defendants in the instant matter attached to their motion the McCullaugh Transcripts as well as the transcript of the Municipal Court proceedings ("Municipal Court Transcript") at which the McCullaugh Transcripts were introduced (Doc. 9-2). They assert that all five transcripts are central to Plaintiff's claims. In addition, Defendants attached the motion of the Summit County Sheriff's Office and Detective Brown to review the affidavit of Detective Brown to determine probable cause, filed in Akron Municipal Court on July 21, 2009 (Doc. 9-3.), and the undated order of the Municipal Court finding probable cause for Plaintiff's arrest (Doc. 9-1).[1] Defendants ask that the Court consider each of these attachments in ruling on their motion to dismiss.

---

[1] Defendants also attached the transcript of testimony given by Lt. Matthew Sellars before the grand jury. (Doc. 9-8.)  The Court has not considered this transcript in making its decision.

The Complaint refers to the testimony Plaintiff gave that is reflected in the McCullaugh Transcripts. They are the basis for the testimony at the probable cause hearing that led to Plaintiff's eventual arrest for falsification and perjury. The testimony before the Municipal Court judge on which his finding of probable cause was based consisted of Detective Brown's reading portions of the McCullaugh Transcripts. (Doc. 1 at ¶ 15, 17). It appears, then, that these transcripts are central to Plaintiff's claims.

Even assuming *arguendo* that the transcripts were found not to be central to Plaintiff's claims, they are a proper subject of judicial notice on two grounds. First, "[a]ll circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record when ruling on a Rule 12(b)(6) motion." *Passa v. City of Columbus*, 123 Fed. App'x. 694, 697 (6th Cir. 2005) (citing *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP.*, 336 F.3d 495, 501 (6th Cir. 2003); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). Second, the Sixth Circuit has recognized that a federal court may take judicial notice of the proceedings of other courts of record, so long as the facts and issues considered are closely related to those before the federal court. *Rodic v. Thistledown*, 615 F.2d 736, 738 (6th Cir. 1980) (taking judicial notice of the fact that the case before it arose from the same facts as those forming the basis of the judgment in the state court), citing *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969) (taking judicial notice of a habeas petitioner's state court filings for purposes of deciding an exhaustion question). While this expands the scope of review somewhat, courts have generally recognized that "the use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 Fed. App'x. at 697 (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d

1015, 1018 (5th Cir. 1996); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th Cir. 1995)). Further, a court may only take judicial notice of a public record "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa*, 123 Fed. App'x. at 697 (citing FED. R. EVID. 201(b)(2)).

The McCullaugh Transcripts are matters of public record if only because they were submitted as exhibits to the Municipal Court during the probable cause hearing. They are a record of Plaintiff's own words and Plaintiff has not challenged their accuracy or completeness. However, the Court will not consider them because it finds such consideration unnecessary, for reasons set forth more fully below. Instead, the Court will take judicial notice of very limited facts found in the Municipal Court Transcript. Additionally, it will take judicial notice of the order of the Municipal Court (Doc. 9-1) for purposes of noting that the judge found probable cause for Plaintiff's arrest.

## C. Malicious Prosecution

### 1. Individual Defendants

Plaintiff alleges that he was subject to malicious prosecution in retaliation for his testimony against the deputies who were ultimately indicted in the McCullaugh matter, and that the probable cause hearing and finding are not the only evidence of malicious prosecution. First, he argues that the proceedings before the Municipal Court were irregular, and that this should raise suspicion about Defendants' pursuit of criminal charges against him. Secondly, he draws attention to the fact that the grand jury declined to indict him on the perjury and falsification charges.

The Supreme Court has recognized a cause of action for malicious prosecution under the Fourth Amendment that is not dependent upon state law. *Albright v. Oliver*, 510 U.S.

266 (1994). Recently, the Sixth Circuit set forth the following elements for a Fourth Amendment malicious prosecution claim:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceedings must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (alterations omitted) (internal citations and quotations omitted).

Plaintiff's Complaint does not set forth the requisite facts to make out a case for malicious prosecution. He has brought his claims to this Court after a hearing before the Municipal Court at which he was represented by counsel, and upon which a judge issued an order finding that probable cause existed to charge him with perjury and falsification. However, "a finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution [. . .] *where the claim is based on a police officer's supplying false information to establish probable cause.*" *Hinchman v. Moore*, 312 F.3d 198, 202-03 (2002) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)) (emphasis added).

In *Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007), the plaintiffs were suspected of having participated in a shooting at a restaurant. After a line-up at which a witness identified both men, a judge signed an arrest warrant for them and they were arrested and charged. *Id.* Approximately one month later, they appeared at a preliminary hearing at which a

state court judge found that probable cause existed to hold them on murder charges. *Id.* Both men were ultimately acquitted of all charges. *Id.* at 563.

After their release, the plaintiffs brought suit against the City of Detroit and several individually-named defendants claiming, among other things, malicious prosecution. *Id.* at 563. The Sixth Circuit held that

> [the Plaintiff] has the problem of the judicial determination of probable cause following the evidentiary preliminary hearing. While that determination has no preclusive effect *if* there is evidence that the claim of malicious prosecution is based on a police officer's supplying false information to establish probable cause, there is no evidence in this record that [anyone] supplied the magistrate judge at that hearing with false information to establish probable cause.

*Id.* at 566 (emphasis in original) (internal citation omitted). It further noted that the hearing transcript from the evidentiary hearing indicated that the plaintiffs had argued not that the evidence was false, but that it was insufficient to support the charges against them. *Id.* The court concluded that the plaintiffs were "precluded from relitigating the matter on a theory of malicious prosecution in this § 1983 suit." *Id.*

So it is in the instant matter. The Court has conducted a limited review of the transcript of the Municipal Court proceedings for purposes of ascertaining whether Plaintiff challenged the veracity of the McCullaugh Transcripts – which are records of Plaintiff's own statements – during the probable cause hearing. It finds that he did not, nor has he made any such attempt before this Court. Having never argued that the evidence on which the Municipal Court based the probable cause finding was false or falsified, Plaintiff is precluded from challenging the sufficiency of the probable cause finding before this Court in the form of a malicious prosecution claim. It is for this reason that the Court finds it unnecessary to consider the McCullaugh Transcripts, regardless of the fact that they are public records. To do so would inevitably thrust the Court into a sufficiency review of the evidence before the Municipal Court,

10

when the only issue currently before it – both in this action and in the current motions – is whether Plaintiff has properly brought a malicious prosecution claim by alleging the falsification of evidence.

While Plaintiff has never attempted to argue that the evidence presented to the Municipal Court was false, he instead attempts to argue that the Municipal Court proceedings were sufficiently "irregular" to cast suspicion upon the probable cause determination. According to Plaintiff's Complaint, whose factual allegations this Court must accept at this stage of the proceedings, the charges against him were presented to several different county prosecutors, including Summit County's prosecutor, and each declined to pursue them. They were ultimately brought before a visiting Municipal Court judge by the Executive Director of the Summit County Sheriff's Office, rather than by a prosecutor. Plaintiff cites each of these facts as being suggestive of improper irregularities in the proceedings.

As Individual Defendants properly note in their reply (Doc. 17), Ohio's statute does not strictly limit who may present an affidavit in support of a probable cause finding, or who may prosecute the matter. *See* R.C. §§ 2935.09, 2935.10. Further, it permits any "judge, clerk, or magistrate" to receive an affidavit and issue an arrest warrant. R.C. § 2935.10.[2] Based upon the facts set forth in Plaintiff's Complaint, the Court can find nothing to suggest a violation of the procedures permitted by statute. Moreover, that a permissible procedure is not regularly used does not make it improperly irregular. Even if it did, this would not cure the fact that

---

[2] Plaintiff suggests that it may have been improper for a visiting judge to preside over the probable cause hearing. The Rules for the Superintendence of the Courts provide that that Chief Justice of the Supreme Court may appoint sitting or retired judges from several different courts to sit as visiting judges on a municipal court. Sup. R. Rule 17(B)(1)-(B)(6). As the Supreme Court has also held that "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions," *In re Disqualification of George*, 798 N.E.2d 23, ¶ 5 (Ohio 2003), the mere fact of the presence of a visiting judge has no bearing on this matter.

Plaintiff has simply failed to make any argument of falsification of evidence such that he could make out a claim for a constitutional violation as a result of malicious prosecution.

Plaintiff's final argument for malicious prosecution is the fact that the grand jury refused to indict him on any of the charges for which the warrant was issued. While this would satisfy the fourth element of a malicious prosecution claim under § 1983, as discussed above it does not negate the fact that Plaintiff has failed to satisfy the second element of his claim, namely that there was a lack of probable cause to support the warrant.[3] In order to survive a Rule 12(c) motion for judgment on the pleadings, Plaintiff must do more than present the Court with unwarranted factual inferences in support of his claim of malicious prosecution in violation of the Fourth Amendment, which he has not done because he has failed to allege that the evidence presented to the Municipal Court was false, and has simply asserted that a nefarious intent motivated any alleged procedural irregularities. Individual Defendants are therefore entitled to judgment on the pleadings on Plaintiff's malicious prosecution claim.[4]

---

[3] The fact that the grand jury did not indict Plaintiff cannot retroactively invalidate the probable cause finding by the Municipal Court. Were the Court to conduct a sufficiency analysis in this matter, it would simply be charged with determining whether the "facts and circumstances within the officer's knowledge" at the time the warrant was sought and executed were "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed" an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The officers and the court cannot be charged with knowing what a grand jury will ultimately do with the charges before it. "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

[4] Individual Defendants have raised a qualified immunity defense to Plaintiff's malicious prosecution claim. Under *Saucier v. Katz*, 533 U.S. 594 (2001) (*overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)), in order to grant qualified immunity, the Court must decide whether Individual Defendants violated Plaintiff's constitutional right and, if so, whether that constitutional right was clearly established. The Court has concluded that none of Plaintiff's constitutional rights were violated. It is therefore unnecessary to proceed further with the qualified immunity analysis.

### 2. Liability of Defendant Summit County

Plaintiff alleges that Defendant Summit County is liable for malicious prosecution both because Individual Defendants' actions constitute "a persistent custom[,] policy and pattern of unconstitutional conduct" and because Defendant Summit County "exercised deliberate indifference [to] and/or tacit authorization" of their actions. Defendant Summit County counters that this is simply an attempt to assert *respondeat superior* liability against it, which is impermissible under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

A governmental entity may not be held liable under 42 U.S.C. § 1983 for an employee's conduct on the basis of *respondeat superior*. *Monell*, 436 U.S. at 690-91. Rather, a plaintiff must show that the government entity itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). In order to establish governmental liability, a plaintiff must demonstrate that an officially executed policy, or the tolerance of a custom, led to or caused the deprivation of a constitutionally protected right. *Id.*

The term "policy" generally "implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). A policy reflects "a deliberate choice to follow a course of action [. . .] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. In turn, the concept of "law" includes "deeply embedded traditional ways of carrying out state policy." *Nashville, C. & S. L. Ry. v. Browning*, 310 U.S. 362, 369 (1940). In short, a "custom" is a "legal institution that is

permanent and established" but not memorialized by written law. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

The Court has already held that Plaintiff cannot establish the violation of a constitutionally protected right. Furthermore, Plaintiff cannot establish that the charges brought against him were the result of any custom "with the force of law" that is "permanent and established." For these reasons, his malicious prosecution claim against Defendant Summit County must fail.

**D.  Defamation**

Plaintiff next alleges that Defendant Alexander defamed him. He sets forth no facts in the Complaint regarding what Defendant Alexander said or in what forum he said it. Defendant Alexander argued in his motion to dismiss that Plaintiff had failed to plead this claim with specificity. In his response in opposition to the motion, Plaintiff referred to an article published in the Akron Beacon Journal dated February 2, 2009, which he attached to his response and asked that the Court consider if it decided to consider matters outside the pleadings. However, while he has objected to the Court's consideration of Defendants' attachments to their motions, he has provided no basis in law for asking the Court to consider the article he has attached to his response, and apparently intends to benefit from any successful arguments Defendants make regarding why this Court may consider matters outside the pleadings.

As carefully set forth above, the Court will consider only those matters it is permitted to consider on a Rule 12(b)(6) motion. It is unaware of any rule that would permit it to consider the article attached by Plaintiff. In addition, Plaintiff must satisfy the basic pleading requirements in order to survive a motion to dismiss: "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff has done nothing more than provide a "formulaic recitation of the elements" of defamation, with no attempt to set forth the facts giving rise to his claim, either in the fact section of his Complaint or in the statement of his second claim for relief. For these reasons, Plaintiff's defamation claim must fail.

**E.  Punitive Damages**

Plaintiff's final claim, apparently raised against all Defendants, is for punitive damages. This claim must fail. Both Plaintiff's federal § 1983 claim and his defamation claim require that an underlying claim or judgment exist in order to proceed with a claim for punitive damages. *See Woodruff v. Ohman*, 29 Fed App'x. 337, 343 (6th Cir. 2002) ("Although punitive damages are permissible under § 1983, they cannot be awarded independent of a judgment of liability under that section."); *Bishop v. Grdina*, 20 Ohio St.3d 28 (Ohio 1985) (No civil cause of action in this state may be maintained simply for punitive damages.").

### III.  CONCLUSION

For the foregoing reasons, the motions of Defendant Summit County and Individual Defendants are GRANTED. Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

**IT IS SO ORDERED**.

Dated: February 16, 2011

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**